Filed 3/17/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>ANNETTE GAYLENE BATTEN,<br><br>    Defendant and Appellant. | A169597<br><br>(San Francisco City<br>& County<br>Super. Ct. No.<br>CT-23012184) |

Annette Gaylene Batten served a life term for murder and was released on lifetime parole in 2017. In 2023, she admitted two parole violations. Penal Code[1] section 3000.08, subdivision (h) required the court to remand her to the custody of the California Department of Corrections and Rehabilitation (CDCR). She appeals, pointing out that under a statute enacted in 2020, someone convicted of murder but released on parole after July 2020 would have been placed on parole for only three years and would therefore have been eligible for punishments other than mandatory remand to the CDCR. (§§ 3000.01, as enacted by Stats. 2020, ch. 29, § 18, 3000.08, subds. (f) & (g).) Batten argues this disparity violates equal protection principles under strict scrutiny or, in the alternative, rational basis review. We agree with the People that rational basis review applies and that there is a rational basis to treat the two groups of inmates differently. We therefore affirm.

---

[1] Undesignated statutory citations are to the Penal Code.

1

## BACKGROUND

Batten was convicted of first degree murder in 1996 and sentenced to life in prison. She was released on parole in August 2017. She generally performed well on parole, and her parole agent recommended her for an early discharge from parole. But at a parole revocation hearing in December 2023, Batten admitted two violations of the conditions of her parole based on an incident in 2021: driving under the influence and failing to inform her parole agent of her resulting arrest. The trial court ordered Batten's parole revoked and remanded her to the custody of the CDCR and the jurisdiction of the Board of Parole Hearings (Board) for future parole consideration. In June 2024, the Board denied Batten's request for parole for one year.[2]

## DISCUSSION

Pursuant to section 3000.1, subdivision (a), any inmate sentenced to life in prison for first or second degree murder is released on parole, if at all, for the rest of the inmate's life. If an inmate released on lifetime parole under section 3000.1 is found to have violated the conditions of parole, the trial court must remand the parolee "to the custody of the [CDCR] and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration." (§ 3000.08, subd. (h).) By contrast, when most other parolees violate their parole conditions, "a trial court generally has the discretion to modify or revoke parole, including the authority to sentence the person to county jail for up to 180 days, or refer the person to a reentry court or other evidence-based program." (*People v. Reed* (2024) 103 Cal.App.5th 43, 51 (*Reed*); § 3000.08, subds. (f) & (g).)

_____

[2] We grant Batten's unopposed request for judicial notice of the record of her parole hearing. (Evid. Code, § 452, subd. (c) [judicial notice may be taken of the official acts of the executive department of the state].)

The Legislature enacted section 3000.01 in 2020. (Stats. 2020, ch. 29, § 18.) That statute applies to inmates released from state prison on or after July 1, 2020 (§ 3000.01, subd. (a)), and states that "notwithstanding any other law" (*id.*, subd. (b)) and with two exceptions not relevant here, "[a]ny inmate sentenced to a life term shall be released on parole for a period of three years" (*id.*, subd. (b)(2)). (See *Reed*, *supra*, 103 Cal.App.5th at p. 52.)

*Reed*, *supra*, 103 Cal.App.5th at page 53, recognized a conflict between sections 3000.01 and 3000.1 for inmates released after July 1, 2020, in that both statutes purport to establish the term of parole for inmates released after life sentences for first or second degree murder. *Reed* held that section 3000.01, the later-enacted statute, takes precedence because of the " 'notwithstanding any other law' " clause, so that the term of parole for an inmate sentenced to life in prison for murder who is released after July 1, 2020, is three years. (*Reed,* at p. 53.) *Reed* then reasoned that because such an inmate is not released on lifetime parole, when the inmate violates the terms of parole, the mandatory remand provision in section 3000.08, subdivision (h) does not apply and the trial court has authority to choose from the alternative sanctions under section 3000.08, subdivisions (f) and (g). (*Reed*, at p. 54.)

Batten admits she does not benefit from section 3000.01 and was subject to mandatory remand to the CDCR under section 3000.08, subdivision (h) because she was released on parole before July 1, 2020. But she contends that the different treatment of inmates released before and after July 1, 2020, violates equal protection principles of the state and federal constitutions.

When a party challenges a law "drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions

3

drawn are inconsistent with equal protection, . . . [t]he only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*People v. Hardin* (2024) 15 Cal.5th 834, 850–851 (*Hardin*).)  Batten first argues that the strict scrutiny standard applies because the issue affects her fundamental interest in personal liberty, meaning freedom from incarceration.  This is incorrect.  Her argument rests on *People v. Olivas* (1976) 17 Cal.3d 236, 251, which stated that a personal liberty interest is a fundamental interest second only to life itself.  *Olivas* applied strict scrutiny to a statute that allowed a trial court to sentence a defendant between 16 and 21 years old and tried as an adult to a longer term in the California Youth Authority than the defendant would have faced if sentenced as an adult.  (*Id.* at pp. 239–241, 243.)

However, our Supreme Court has made clear that "*Olivas*'s language should not be interpreted so broadly as to require strict scrutiny 'whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes, because such statutes always implicate the right to "personal liberty" of the affected individuals.' " (*People v. Williams* (2024) 17 Cal.5th 99, 123.)  "A defendant . . . 'does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838.)  As a result, when a party challenges a classification that does not involve a suspect class and does not implicate any interest like that at issue in *Olivas* itself, in which an individual faced a longer punishment when sentenced as a juvenile than as an adult, our Supreme Court has instead applied rational basis review.  (*Ibid.*)  "Application of the strict scrutiny standard [outside those contexts] would be incompatible with the broad discretion the Legislature traditionally has been understood to

4

exercise in defining crimes and specifying punishment." (*Ibid.*) Thus, the Supreme Court has applied rational basis review to a challenge to statutes punishing a battery on a custodial officer without injury more severely than a battery on a custodial officer with injury (*ibid.*), and statutes allowing early release from custody for inmates convicted at a young age of certain crimes but not others (*Williams*, at pp. 110, 123–124). Because Batten's equal protection challenge does not concern a suspect class or an interest like that in *Olivas*, we apply rational basis review.

"Rational basis review 'sets a high bar' for litigants challenging legislative enactments. [Citation.] The reasons for this lie at the heart of our democratic system of governance. 'Coupled with a rebuttable presumption that legislation is constitutional, [rational basis review] helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair.' [Citation.] [¶] Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' [Citation.] '[T]he logic behind a potential justification need [not] be persuasive or sensible— rather than simply rational.' " (*Hardin, supra*, 15 Cal.5th at p. 852.)

5

Batten contends it is irrational to remand her to the CDCR because she had performed well on parole and was mostly successful at reintegrating into society. She asserts that there is no clear indication in the legislative history why the Legislature chose not to apply section 3000.01 to people like her who were released before July 1, 2020. She contends the trial court should have had the authority under section 3000.08, subdivisions (f) and (g) to select the most appropriate punishment for her parole violation.

Batten's arguments invite us to perform precisely the type of second-guessing of policy choices that rational basis review is designed to avoid. Even if we were to agree with Batten that her record on parole suggests her parole violation was an aberration from an otherwise encouraging record of progress in reintegrating into society, it would not matter. The question is whether there is any rational reason why the Legislature could have chosen to make section 3000.01 operate only prospectively from July 1, 2020. The People offer several rationales, but the most obvious one is that when the Board is determining whether to offer parole to an inmate, it does so in part based on conditions of treatment or control on parole. (Cal. Code Regs., tit. 15, § 2402.) The Board could decide that parole would not be appropriate for some inmates if they would only be supervised for three years after release, while parole would be appropriate if the term were longer. Likewise, the Board could also determine that some inmates would only be suitable for parole if subject to the heavy consequence of a mandatory remand to CDCR custody for a parole violation. The Legislature could reasonably decide that upending these Board considerations by changing the term of parole for such inmates or releasing them from the mandatory consequences for a parole violation would be unwise, and it could therefore rationally choose to make section 3000.01 operate prospectively only.

6

Batten's primary response to the rationales the People offer is to point out there is no support for them in the legislative history. This is true but irrelevant; "[t]he underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers." (*Hardin*, *supra*, 15 Cal.5th at p. 852; see *ibid.* [under rational basis review, courts must " 'treat the statute's *potential* logic and assumptions far more permissively than with other standards of constitutional or regulatory review,' " italics added].)

Batten also argues it is manifestly unfair to treat inmates differently in parole revocation proceedings based only on the date on which they were released on parole. She notes that she was released on parole in 2017 and complied with her parole conditions until 2021, when her parole violation triggered the mandatory remand provision in section 3000.08, subdivision (h). In *Reed*, by contrast, the inmate was released in 2016, violated his parole conditions and was remanded to the CDCR in 2017, was paroled again in 2021, and in 2022 and 2023 was found again to have violated the conditions of parole, but was not subject to mandatory remand because of section 3000.01. (*Reed*, *supra*, 103 Cal.App.5th at pp. 47, 50, 54.) Batten concludes it is unjust that she was remanded to the CDCR because she complied with her parole conditions until her 2021 violations, while Reed was not subject to the mandatory remand in 2021 despite violating his probation conditions twice, once in 2017 and again after rerelease.

Batten's single parole violation does compare favorably with Reed's multiple violations. But the difference between Batten and Reed is that the Board presumably was aware when it released Reed the second time in 2021 that he would not be subject to mandatory remand for any future parole violations, while the Board could have had no inkling of such a possibility

7

when it released Batten in 2017.  The Legislature could have rationally decided not to invalidate the Board's reasoning retroactively by freeing all existing parolees like Batten from the mandatory remand requirement. Besides, as the People point out, Batten ignores the fact that she herself will benefit from section 3000.01 and be free of the mandatory remand provision in section 3000.08, subdivision (h) whenever she is next released on parole.  If she were to violate her conditions of parole again, like Reed did, the trial court would have the authority to select the appropriate punishment, just like the trial court in *Reed*.

## DISPOSITION

The judgment is affirmed.

_____
Brown, P. J.

We concur:


_____
Streeter, J.


_____
Goldman, J.


A169597, People v. Batten

9

Trial Court: San Francisco City and County Superior Court

Trial Judge:       Hon. Harry M. Dorfman

Counsel:

Shaghayegh Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Maria G. Chan and Janine W. Boomer, Deputy Attorneys General, for Plaintiff and Respondent.